UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES R. MERCER, JR.,

        Plaintiff,

    v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION (SUED IN OFFICIAL
CAPACITY); MARCY C.F. OFFICE OF
THE DEPUTY SUPERINTENDENT FOR
PROGRAMS (SUED IN OFFICIAL
CAPACITY); MARCY C.F. CORRECTIONS
LIEUTENANT K. WHITMORE (SUED IN
INDIVIDUAL CAPACITY); MARCY C.F.
DEPUTY SUPERINTENDENT FOR PROGRAMS
M. KINDERMAN (RETIRED) (SUED IN
INDIVIDUAL CAPACITY); MARCY C.F.
DEPUTY SUPERINTENDENT FOR ADMIN-
ISTRATION D. CROSSWAY (SUED IN
INDIVIDUAL CAPACITY); MARCY C.F.
FACILITY HEALTH SERVICES DIRECTOR
DR. S. ZAKI (SUED IN INDIVIDUAL
CAPACITY); AND MARCY C.F. NURSE
ADMINISTRATOR C. COPPOLA (SUED
IN INDIVIDUAL CAPACITY),

        Defendant(s).

**COMPLAINT**
(PRO SE PRISONER)

CASE NO. _9:20-cv-665(MAD/TWD)_

**JURY TRIAL DEMANDED**



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
JUN 15 2020
AT_____ O'CLOCK_____
John M. Domurad. Clerk - Syracuse

---

## I. LEGAL BASIS FOR COMPLAINT

    This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution and laws of the United States. This action is brought by Plaintiff pursuant to 42 U.S.C. § 1983 against a New York State agency and office/employees of that agency who have acted under color of law.

## II. PLAINTIFF INFORMATION

Plaintiff

Name:                          JAMES R. MERCER, JR.

Prisoner ID:                   87C0688

Place of detention:            Marcy Correctional Facility

Address:                       9000 Old River Road, P.O. Box 3600
                               Marcy, New York 13403-3600

### III. DEFENDANT(S) INFORMATION

Defendant No. 1

Name:                          New York State Department of
                               Corrections and Community Supervision

Job title:                     Agency

Work address:                  Harriman State Campus
                               1220 Washington Avenue
                               Albany, New York 12226

Defendant No. 2

Name:                          Marcy C.F. Office of the Deputy
                               Superintendent for Programs

Job title:                     Inter-departmental Office

Work address:                  Marcy Correctional Facility
                               9000 Old River Road, P.O. Box 9000
                               Marcy, New York 13403-9000

Defendant No. 3

Name:                          K. Whitmore

Job title:                     Corrections Lieutenant

Work address:                  Marcy Correctional Facility
                               9000 Old River Road, P.O. Box 9000
                               Marcy, New York 13403-9000

Defendant No. 4

Name:                          M. Kinderman (Retired)

Job title:                     Deputy Superintendent for Programs

Work address:                  Marcy Correctional Facility

                                        9000 Old River Road, P.O. Box 9000
                                        Marcy, New York 13403-9000

Defendant No. 5

Name:                                   D. Crossway

Job title:                              Deputy Superintendent for Administra-
                                        tion

Work address:                           Marcy Correctional Facility
                                        9000 Old River Road, P.O. Box 9000
                                        Marcy, New York 13403-9000

Defendant No. 6

Name:                                   Dr. S. Zaki

Job title:                              Facility Health Services Director

Work address:                           Marcy Correctional Facility
                                        9000 Old River Road, P.O. Box 9000
                                        Marcy, New York 13403-9000

Defendant No. 7

Name:                                   C. Coppola

Job title:                              Nurse Administrator

Work address:                           Marcy Correctional Facility
                                        9000 Old River Road, P.O. Box 9000
                                        Marcy, New York 13403-3600

## IV. STATEMENT OF FACTS

1.    On 3/4/19 Plaintiff was awakened at 5:15 a.m. and trans-
ported to the Marcy Correctional Facility ("Marcy") Gymnasium
Television Room and ordered by Corrections Lieutenant K. Whitmore
("Lt. Whitmore") to produce a urine sample for testing. Plaintiff
complied without incident.

2.    On 3/11/19 Plaintiff attended a meeting between the In-
mate Liaison Committee ("ILC") and the Marcy Executive Team. Also
in attendance were Lt. Whitmore, ILC Staff Advisor Deyo and Staff

Imam.

   3.    After the Executive Team concluded and departed the area,
Lt. Whitmore addressed the ILC and remaining staff informing that
"threats to facility staff, especially chaplains would not be
tolerated." The ILC was directed to then leave.

   4.    As the ILC were at a distance, Lt. Whitmore shouted for
them to return to him in front of the Marcy Infirmary (Bldg. 11).
As the ILC approached, Lt. Whitmore told all of them to leave
with the exception of Plaintiff. Lt. Whitmore stated to Plaintiff
"You popped dirty on your first urine test, however, the confirma-
tory test was clean. I am going to get you, you dirty crackhead. I
am going to get every last one of you. Your on the ILC representing
the inmate population in front of the Executive Team. What is that
a joke. A dirty crackhead. I am going to get all of you one way or
the other."

   5.    After Lt. Whitmore's statements to Plaintiff, Plaintiff
asked permission to speak. Plaintiff informed Lt. Whitmore "You
know I am not an Odinist. I am a non-practicing Jew." Lt. Whitmore
responded "What does that have to do with anything. I'm going to
get you, you dirty crackhead. Get away from me."

   6.    On 3/12/19 Plaintiff was at his assigned Administrative
Clerk assignment within the New York State Office of Mental Health
Prison-Based Sex Offender Treatment Program ("PBSOTP") (Bldg. 26).
Plaintiff was approached by Lt. Whitmore who stated "What are you
doing here." Plaintiff responded "I am a Clerk here." Lt. Whitmore
then stated "Not anymore. Your now on Lawns and Grounds. I dare

you not to report tomorrow morning." Plaintiff retrieved his I.D.
Card and returned to his assigned housing unit.

7.    Shortly after the 3/12/19 exchange between Lt. Whitmore
and Plaintiff, Lt. Whitmore entered Plaintiff's assigned housing
unit and spoke to the housing unit Corrections Officer ("C.O.")
who then informed Plaintiff "Per Lt. Whitmore you are to report to
Lawns and Grounds ("L&G") tomorrow morning."

8.    On 3/12/19 Plaintiff mailed a letter to Marcy Deputy
Superintendent for Programs ("DSP") M. Kinderman ("DSP Kinderman")
in relation to his program change. DSP Kinderman responded in a
Memorandum ("Memo") dated 3/13/19 stating "In response to your
letter, I will make time to meet with you and discuss the issues
you raised early next week."

9.    On 3/1/319 Plaintiff reported to the L&G Garage and ex-
plained his disabling medical con ditions to the L&G C.O. C.O.
responded "I have nothing to do with this. Lt. Whitmore told me ;if
he can't get you one way, he will get you by working you to death."

10.    On 3/14/19 Plaintiff reported to Sick Call and received
a temporary Medical Permit/Pass with the restriction of "No Pro-
grams" for 3/14/19 and 3/15/19. The Nurse advised Plaintiff "I will
have your medical provider review your chart because your unsuit-
able to work in L&G. In the evening mail Plaintiff received an un-
dated Medical Permit/Pass signed by his assigned medical provider,
Doctor S. Zaki ("Dr. Zaki") with the medical restriction of "No
Lawns and Grounds."

11.    On 3/1/419 Plaintiff had a telephone conversation with

-5-

his Mother in relation to the events and threats made to him by Lt. Whitmore. Plaintiff's Mother telephoned the New York State Department of Corrections and Community Supervision ("DOCCS") Office of Special Investigations ("OSI"). After speaking to a secretay, Plaintiff's Mother was referred to an Investigator who recorded a complaint.

12. On 3/16/19 Plaintiff was directed to report to the Marcy Disciplinary Office (Bldg. 11). Upon arrival Plaintiff was Pat Frisked and interviewed by Marcy Corrections Captain Valenzano ("Capt. Valenzano") as to the complaint lodged by his Mother. Plaintiff was questioned as to what was taking place and informed Capt. Zalenzano. Capt. Valenzano responded "Well your an Odinist." Plaintiff replied "I an designated Jewish not Odinist." Capt. Valenzano stated "Your not Odinist." Plaintiff replied "I am a non-practicing Jew." Capt. Valenzano then questioned "The what connections do you have to the Odinists". Plaintiff replied "My only connection is that the Odinist facilitator and I volunteer in the Law Library." Plaintiff was then questioned "What problems do you have with the Chaplains." Plaintiff replied "The only interactions I have with any of the Chaplains is in passing." i.e. saying good morning, good afternoon or have a good noght. Capt. Valenzano questioned Plaintiff "Do you use drugs." Plaintiff replied "You can get a cup right now and I will produce a urine sample. I will produce a urine sample every day, if you want." The interview concluded with Capt. Valenzano stating "I have to investigate this further. You can go."

13. On 3/17/19 Plaintiff mailed a letter to OSI setting forth specifics of his complaints.

14. On 3/25/19 Plaintiff received with the evening mail a Medical Permit/Pass issued by Dr. Zaki indicating a medical restriction of "May work Lawns and Grounds. Not able to operate heavy equipment."

15. On 3/25/19 Plaintiff mailed a letter to OSI setting forth his complaints with the addition of complaints related to the disregard for his legitimate and well documented disabling medical conditions. Plaintiff mailed a copy of this 3/25/19 letter to Marcy Superintendent Reardon. Plaintiff then received a 3/26/19 Interdepartmental Communication informing him that his letter was referred to the DSS and that any further correspondence on this matter should be referred to this person.

16. On 3/26/19 Plaintiff reported to Sick Call and explained his disabling medical conditions and pointed out that he was presently Approved and waiting a second Neurosurgery consult for evaluation of a second spinal surgery. Nurse informed Plaintiff that someone called Medical to ask why he was not able to work L&G and there was a conversation between the Nurse Administrator and Dr. Zaki. Dr. Zaki determined no reason for Plaintiff's inability to work L&G. resulting in the new Medical Permit/Pass.

17. On 3/28/19 Plaintiff maileda Inmate Grievance Complaint ("Grievance") to Marcy Inmate Grievance Program ("IGP") Supervisor Pfendler ("IGPS Pfendler") in relation to the 3/25/19 Medical Permit/Pass issued by Dr. Zaki. Acknowledgement of filing was on

-7-

4/19/19, Titled "Amend Permit" and assigned Log Number MCY 24106-19. Hearing occurred on 4/31/19 resulting in a "Pass-Through" Response by the Grievance Committee. On 4/4/19 Plaintiff indicated on the Response "I agree with the IGRC response and wish to appeal to the Superintendent", signed/dated Response and returned to IGPS Pfendler. Plaintiff received a IGP Superintendent determination dated 4/8/19 "Grievance is denied." Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 4/9/19. Plaintiff received a communication dated 4/12/19 from the IGP informing his of "Production and Mailing of Appeal to C.O.R.C. in Albany on 4/12/19.

18.  Plaintiff received a Memo in response to the 3/14/19 OSI complaint lodged by his Mother and his follow-up letter from Marcy Deputy Superintendent for Security ("DSS") Spina ("DSS Spina") dated 3/29/19. The Memo set forth, in part, "You yourself have tested positive for drug use, but your levels in the confirming test were just below the levels where disciplinary action could be taken against you." and "It was discussed and determined that with the inmates you associate with, and behaviors you showed, it would be detrimental to the facility to allow you to hold positions such as working in the Law Library or regular Library, or any position which allows you additional access and influence to the general population. Therefore, your program was changed. Medical has reviewed your condition, and made a decision as to what physical activity you would be capable of. Any disagreement with Medical's assessment should be taken up with them.

19.  On 4/3/19 Plaintiff mailed a letter to OSI in response to the information supplied in the 3/29/19 Memo of DSS Spina.

-8-

20.  On 4/6/19 Plaintiff mailed a letter to C.F. Leone, Supervising Library/Law Library Coordinator ("Leone") setting forth concerns/deficiencies in the Marcy Law Library and his removal from volunteering therein, with a copy to DSP Kinderman.

21.  In a Memo dated 4/8/19 Plaintiff is informed by DSP Kinderman as to the 4/6/19 Leone letter. DSP Kinderman's Memo states, in part, "You omitted a number of key facts concerning yourself and your negative activities."

22.  On 4/9/19 Plaintiff mailed a letter to Leone related to the mischaracterizations in the 4/8/19 Memo of DSP Kinderman. i.e. Plaintiff being or associating with prisoners of the Odinist faith group.

23.  In a Memo dated 4/11/19, DSP Kinderman responds to Plaintiff's complaints to Leone.

24.  In a 4/22/19 Memo Principal Psychologist Shupp ("PBSOTP Shupp") addresses Plaintiff's beliefs as to removal from PBSOTP Librarian position by Security staff without reason and PBSOTP's staff non-investigation of Plaintiff's removal to determine the legitimacy of this decision.

25.  On 4/30/19 Plaintiff mailed a Grievance to IGPS Pfendler in relation to receipt of only idle pay while working in L&G. Acknowledgement of filing was on (date not legible due to copy machine malfunction), Titled "Not Paid For Programs") and assigned Log Number MCY 24203-19. Hearing occurred on 5/10/19 resulting in a "Accepted" Response by the Grievance Committee. On 5/17/19 Plaintiff indicated on the Response "I agree with IGRC response

and wish to appeal to the Superintendent.", signed/dated response
and returned to IGPS Pfendler. Plaintiff received a IGP Superin-
tendent determination dated 6/5/19 "Grievance is accepted to the
extent noted above." Plaintiff mailed his "Appeal Statement" to
IGPS Pfendler on 6/7/19. Plaintiff received a communication from
the IGP dated 6/12/19 informing him of "Production and Mailing of
Appeal to C.O.R.C. in Albany" on 6/12/19.

26.  On 4/30/19 Plaintiff mailed a letter to PBSOTP Program
Assistant Waterman ("PBSOTP Waterman") and PBSOTP Team Leader
Thomas ("PBSOTP Thomas") requesting placement in a vacant Program
Aide assignment. Plaintiff is missing the response to this request
however, upon his information and belief a written response was
received from PBSOTP Thomas which denied the request based on
Program Aide assignments being reserved for individuals who have
satisfied the program requirements of the PBSOTP.

27.  On 5/9/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to not being returned to Neurosurgeon. Acknowledgement
of filing was on 5/10/19, Titled "Send Me To Neurosurgeon" and
assigned Log Number MCY 24250-19. Hearing occurred on 5/20/19
resulting in a "denied" response by the Grievance Committee. On
5/20/19 Plaintiff indicated on the response "I disagree with IGRC
response and wish to appeal to the Superintendent.", signed/dated
response and returned to IGPS Pfendler. Plaintiff received a IGP
Superintendent determination dated 6/5/19 "Grievance is denied."
Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 6/7/19.
Plaintiff received a communication dated 6/14/19 from the IGP

informing his of "Production and Mailing of Appeal to C.O.R.C. in Albany" on 6/14/19.

28.  On 5/12/19 Plaintiff mailed a letter to DSP Kinderman in relation to "No Show" program assignment, medical issues, back pay, program sticker(s), and attempts to resolve program conflicts.

29.  On 5/16/19 DSP Kinderman responded to Plaintiff's 5/12/19 letter. DSP Kinderman took exception to Plaintiff's referral to his previously removed from assignment in the PBSOTP by Lt. Whitmore as an "Administrative Aid" being "indicative of a potential security problem which needed to be addressed." DSP Kinderman further responded to program pay issues, Program Committee and Plaintiff's working in the Messhall.

30.  On 5/17/19 DSP Kinderman responded to Plaintiff in a Memo stating "In follow up to my previous correspondence, Medical has advised me that you are clear to be assigned to work in either Food Service of Inside Lawns and Grounds. You will be called out to Program Committee next week for a review of a possible change of assignment.

31.  On 5/18/19 Plaintiff mailed a letter to DSP Kinderman in an attempt to resolve programming conflicts. Plaintiff set forth the differences in the reasons supplied for his removal from the PBSOTP Administrative Clerk assignment provided by different Security and Administrative staff. Further, Plaintiff relied on the reason for removal provided by DSS Spina of "Any position which allows you additional access and influence to the general population."

32. On 5/21/19 Plaintiff mailed a letter to DOCCS Deputy
Commissioner & Chief Medical Officer Koenigsmann ("DMD Koenigs-
mann") in relation to "Withholding of medical care (disabling
medical conditions)". This letter outlines claims of the with-
holding of medical care for disabling medical conditions because
of issues with Security over programming; past medical care being
provided, the Investigative Statement of Marcy Nurse Administrator
Cppola ("NA Coppola") in Grievance MCY 24250-19 (the medical care
was not being denied but delayed because of Plaintiff's issues
with Security over programs). A copy of Plaintiff's 5/21/19 letter
was also provided to Marcy Deputy Superintendent for Administra-
tion Crossway ("DSA Crossway").

33. Upon Plaintiff's information and belief, after DSA Cross-
way received the copy of the 5/21/19 letter to DMD Koenigsmann,
Crossway interviewed Plaintiff in the Marcy Infirmary (Bldg. 11).
A discussion was had that concluded with DSA Crossway making a
statement to the effect "So now your out of Lawns and Grounds,
your satisfied with your medical care" to which Plaintiff respond-
ed "yes".

34. On 5/21/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to informal resolution of conflicts to programming.
Acknowledgement of filing was on 6/10/19, Titled "Unfiled Griev-
ance" and assigned Log Number MCY 24341-19. The 5/21/19 Grievance
was not filed by IGPS Pfendler and became an exhibit to a subse-
quent Grievance mailed by Plaintiff to IGPS Pfendler on 6/9/19
resulting in filing information supplied. Further exhibits were a

6/9/19 letter Plaintiff mailed to OSI in relation to IGPS Pfend-
ler's non-filing, denying Plaintiff a hearing and response.
Hearing occurred as to the 6/9/19 Grievance resulting in a "Denied"
response by the Grievance Committee. On 9/16/19 Plaintiff indicated
on the response "I disagree with IGRC response and wish to appeal
to the Superintendent", signed/dated response and returned to IGPS
Pfendlre. Plaintiff received a IGP Superintendent determination
dated 10/23/19 "Grievance is denied." Plaintiff mailed his "Appeal
Statement" to IGPS Pfendler on 10/24/19. Plaintiff received a
communication dated 10/28/19 from the IGP informing him of "Pro-
duction and Mailing of Appeal to C.O.R.C. in Albany" on 10/28/19.

35.  On 5/23/19 Plaintiff received a written communication
from NA Coppola in response to his copy of the 5/21/19 letter to
DMD Koenigsmann and DSA Crossway. NA Coppola's communication
states, in part, "The appropriate medical care is being provided
and the medical excuse is accurate according to your provider."

36.  On 5/28/19 Plaintiff had a call out with Dr. Zaki. Upon
discussion and evaluation, Dr. Zaki issued Plaintiff a Medical
Permit/Pass that included, but was not limited to, "Unable to
lift greater than 10 lbs.", "Unable to climb stairs or ladders/
heights", "No pushing/Pulling/Bending/Shoveling activities (raking,
mopping, sweeping, heavy outdoor work, etc.) and others. Plaintiff
does not have a copy of the 5/28/19 Medical Permit/Pass that had
a Start date 5/28/19 - End date 11/28/19 as he was directed by NA
Coppola to surrender the Medical Permit/Pass on or about 6/27/19
as she supplied Plaintiff with a copy of a newly issued Medical

Permit/Pass issued by Dr. Zaki.

37.  On 5/28/19 Plaintiff mailed a DOCCS Request for Reason-able Accommodations ("RRA") to DSP Kinderman. The completed RRA establishes that DSP Kinderman received the RRA on 5/29/19, Med-ical Verification occurred on 5/30/19 by Dr. Zaki and DSP Kinderman denied the RRA on 5/31/19 stating " Inmate can solicit assistance from inmate(s) on his dorm who attend commissary at the same time. We will not assign a M.A. as they are needed for inmates with mobility issues.

38.  On 5/28/19 Plaintiff mailed a letter to Marcy Program Committee Chairman, Offender Rehabilitation Coordinator Smith ("ORC Smith") setting forth his medical restrictions issued by Dr. Zaki on 5/28/19, requesting removal from Inside L&G and a call out to the Program Committee for assignment that has consideration for Plaintiff's disabling medical conditions and Medical Permit/Pass restrictions. Plaintiff is unaware of date of call out by ORC Smith, however, after ORC Smith reviewed Plaintiff's medical restrictions, ORC Smith assigned Plaintiff to "AM Medically Un-assigned."

39.  Plaintiff received a program sticker in the mail inform-ing him that he was to begin an a.m. module in "Food Service-Non-Training assignment effective 6/10/19.

40.  On 6/11/19 Plaintiff mailed a letter to DSP Kinderman with copy to DSA Crossway in an attempt to resolve programming issues and the conflict of those issues with the medical restric-tions issued by Dr. Zaki.

41. On 6/11/19 Plaintiff received from IGPS Pfendler, DSP Kinderman's denial of his RRA. Plaintiff indicated "I disagree with this determination", signed/dated completed RRA and was provided a copy of the completed RRA.

42. On 6/12/19 Plaintiff mailed a Grievance to IGPS Pfendler in relation to DSP Kinderman's denial of his 5/28/19 RRA. Acknowledgement of filing was on 6/14/19, Titled "Need Assistance" and assigned Log Number MCY 24352-19. Hearing of the Grievance occurred on 7/19/19 resulting in a "Denied" response by the Grievance Committee. Present at the Hearing and supplying verbal testimony was DSP Kinderman. DSP Kinderman also directed that his 7/9/19 Memo to IGPS Pfendler be read to Plaintiff. On 7/29/19 Plaintiff indicated on the response "I disagree with IGRC response and wish to appeal to the Superintendent.", signed/dated response and returned to IGPS Pfendler. Plaintiff received a IGP Superintendent determination dated 9/3/19 "Grievance is denied." Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 9/9/19. Plaintiff received a communication dated 9/16/19 from the IGP informing him of "Production and Mailing of Appeal to C.O.R.C. in Allbany" on 9/16/19.

43. On 6/15/19 Plaintiff mailed a letter to Marcy's Program Pay Office with a copy to DSP Kinderman in relation to his belief that he did not receive program pay for the period of 5/16/19 to 5/30/19. Attached were copies of DOCCS "Inmate Statements".

44. Plaintiff received a Memo from DSP Kinderman dated

6/20/19 stating, in part, "You will not be returned to Clerk position in Building 26 [PBSOTP]. I have made this clear to you, Program Committee, and the staff of the PBSOTP. Compliance with my order will be maintained by both Program and Security staff." and "Your current assignment was worked out with both Medical and Food Service staff keeping in mind your medical limitations."

45.  On 6/21/19 Plaintiff mailed a request to Marcy's Medical Records Department seeking to purchase copies of specific medical records from his files.

46.  Plaintiff received a letter dated 6/26/19 from DOCCS Deputy Commissioner for Program Services ("DDCP") McKoy ("DDCP McKoy") that states, in part, "Kinderman informed you in his Meemorandum to you,...that your removal from you Law Library Program assignment was reviewed and deemed appropriate. The removal was for 'Security' and is not viewed as a negative removal on your behalf...A review of your records indicates you were assigned to Food Service effective June 10, 2019."

47.  Plaintiff had a call out with Dr. Zaki on 6/27/19 and discussed that working in Mess Hall was contradictory to the medical restrictions Dr. Zaki issued. Dr. Zaki set forth "I was told you were given a job within your medical restrictions. If you are told to do something that violates your restrictions, show them your Medical Permit/Pass." Upon Plaintiff's information and belief, on 6/27/19 Dr. Zaki issued a new Medical Permit/Pass that included the medical restriction of "Unable to stand for more than 20 minutes."

48.   On 6/27/19 Plaintiff mailed a letter to ORC Smith with
copy to DSP Kinderman in relation to his program assignment in the
Mess Hall in light of the new medical restriction of "Unable to
stand for more than 20 minutes" issued by Dr. Zaki on 6/27/19,
being forced to program over the required 30 hours per week and
requested "A program assignment that allows participation consis-
tent with medical restrictions."

49.   On 7/1/19 DSP Kinderman responded by Memo as to Plain-
tiff's 6/27/19 letter. DSP Kinderman justifies Plaintiff's Plain-
tiff's  programming in excess of DOCCS required 30 hours per week,
reiterates his placement of responsibility on the Food Service
Administrator to find an assignment in the Mess Hall that was not
in violation of medical limitations and accuses Plaintiff of
"attempting to manipulate  himself into returning to a Clerk pos-
ition in either Building #26 [PBSOTP], or on the dorm."

50.   On 7/2/19 Plaintiff mailed a letter to OSI with an
attached copy of his 7/2/19 letter to DSP Kinderman in relation
to his program hours in the PBSOTP, hours worked in the Mess Hall,
punitive measures against him through programming, no duties in
Mess Hall that do not violate medical limitations, informing DSP
Kinderman that he was not seeking return to a Clerk position in
Building 26 [PBSOTP], that he never requested a dorm position or
to return to the Law Library. What Plaintiff did request was "a
program assignment in addition to [PBSOTP participation] program-
ming that is within my abilities and not contrary to my disabling
medical conditions and restrictions.

-17-

51.  On 7/4/19 Plaintiff mailed a letter to DDCP McKoy in
response to DDCP McKoy's 6/26/19 letter. Plaintiff informs DDCP
McKoy that he responded based on being provided inaccurate infor-
mation. i.e. Plaintiff was not removed from a Law Library assign-
ment as he was not assigned to the Law Library assignment, puni-
tive measures through programming, that for whatever Plaintiff is
alleged to have done, no misbehavior reports were issued, resolu-
tion of program issues. A copy of Plaintiff's letter was mailed
to OSI.

52.  On 7/8/19 Plaintiff mailed a letter to NA Coppola in
relation to the non-response of his 6/21/19 request to purchase
medical records. Upon Plaintiff's information and belief, he was
called out to review and purchase medical records and informed
"We never received your request."

53.  Plaintiff received a Memo dated 7/9/19 from DSP Kinder-
man stating "Having read your latest letter, it is apparent that
there is no new information to share that hasn't already been
discussed. It would serve no useful purpose to respond any fur-
ther. Your letter will be made part of your record."

54.  On 7/9/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to the number of program hours over the required 30
hours per week he was forced to program and DSP Kinderman's plac-
ing responsibility of the Marcy Food Service Administrator to
find a job in the Mess Hall that did not violate Plaintiff's
medical restrictions. Acknowledgement of filing was on 7/10/19,
Titled "Change My Program" and assigned Log Number MCY 24406-19.

Hearing occurred on 8/13/19 resulting in a "Denied" response by
the Grievance Committee. On 8/19/19 Plaintiff indicated on the
response "I disagree with IGRC response and wish to appeal to
the Superintendent", signed/dated response and returned to IGPS
Pfendler. Plaintiff received a IGP Superintendent determination
dated 9/3/19 "Grievance is denied." Plaintiff mailed his "Appeal
Statement" to IGPS Pfendler on 9/9/19. Plaintiff received a com-
munication dated 9/16/19 from the IGP informing him of "Production
and Mainling of Appeal to C.O.R.C in Albany" on 9/16/19.

55.  On 7/11/19 Plaintiff mailed a letter to the Unit Chief
of the PBSOTP, Dr. Bud C. Ballinger III ("PBSOTP Ballinger") with
copy to his PBSOTP Primary Clinician, Dr. C. Taylor ("PBSOTP Tay-
lor") in relation to his programming hours. Plaintiff requested to
be allowed to not participate in Study Hall on Tuesdays and Thurs-
days, as well as Therapeutic Community Meetings Monday through
Friday. This request was verbally denied by PBSOTP Taylor.

56.  On 7/14/19 Plaintiff mailed a letter to DMD Koenigsmann
with copy to OSI and DSA Crossway in relation to the non-response
to his 5/21/19 letter. In Plaintiff's letter he sets forth facts
iterated to OSI, his interview with DSA Crossway and follow-up
conversation about programming in Mess Hall despite medical re-
strictions contrary to the assignment, program hours over the
required 30 hours per week and medical testing/diagnosis.

57.  On 7/17/19 Plaintiff mailed a letter to DSA Crossway
and DSP Kinderman informing them that to perform one job in Mess
Hall to avoid violation of one medical restriction, violates

other medical restrictions. Plaintiff voiced his perception of
being a liability in the Mess Hall and requested a alternate 15
hour per week assignment.

58.  On 7/18/19 Plaintiff, after review of his medical rec-
ords, mailed a letter to the Marcy Medical Records Department
with copy to DSA Crossway informing them of missing medical
records upon review.

59.  In a 7/19/19 Memo DSP Kinderman informs Plaintiff "Your
current assignment in the Messhall, wiping down tables and stools,
is well within the guidelines of the limitations you were able to
secure from our Facility Medical Doctor after the multiple trips
you made to Sick Call. At each turn, you have come up with another
excuse to not be assigned to any function or job that requires you
to do physical labor...What I find most interesting is that you
were able to perform such tasks, even on a voluntary basis, when
it suited your own interests...Although you state to the contrary,
there is no doubt your goal is to manipulate your way back into a
Clerk's position in Building #26, PBSOTP. That will not happen.
You were removed for good cause related to Security concerns that
remain present and have not changed."

60.  On 7/22/19 Plaintiff had a discussion with Marcy Food
Service Administrator ("FSA") Kopec ("FSA Kopec") at which time he
explained his medical restrictions. FSA Kopec responded to Plain-
tiff "I originally seen you[r] medical restrictions and disquali-
fied you. I received an E-Mail from the Administration and was
told I had to put you to work because of your disabilities to

avoid litigation under the Americans With Disability Act. You are a liability for me and there are no jobs I can give you where you are not violating your medical restrictions. After 90 days I will allow you to sign out or if you want you can refuse now and go to the box."

61.    On 7/22/19 Plaintiff had a call out with Dr. Zaki and discussed that working in the Mess Hall was contrary to his issued medical restrictions. Dr. Zaki issued Plaintiff a new Medical Permit/Pass for the Start date 7/22/19 - End date 11/22/20. The new Medical Permit/Pass was the same as the previous, however, included "Other * Due to above limitations can not work Mess Hall duty."

62.    On 7/23/19 Plaintiff was called to the Marcy Infirmary (Bldg. 11) and told to bring his Medical Permit(s)/Passes. Upon arrival Plaintiff was met by NA Coppola who directed him to give her his Medical Permit(s)/Passes. Plaintiff did as directed and NA Coppola ripped up the 7/22/19 Medical Permit/Pass issued by Dr. Zaki and supplied him with a copy of the previous Medical Permit/Pass stating "You have to go back to work in the Mess Hall" and walked away. Upon Plaintiff's information and belief, NA Coppola and DSA Crossway had a meeting on 7/23/19 that was overheard by prisoners waiting to be seen for call outs.

63.    On 7/23/19 Plaintiff mailed a letter to Disability Rights New York ("DRNY") requesting assistance with resolution of violations of the American With Disabilities Act with malicious intent. In Plaintiff's letter he included background information, i.e.

to 3/11/19 discussion between Lt. Whitmore and Plaintiff, Lt. Whitmore's actions as Plaintiff's programming, the 7/22/19 discussion between FSA Kopec and Plaintiff, medical/diagnostic testing, denial of 5/28/19 RRA, etc.

64.  On 7/30/19 Plaintiff mailed a letter to OSI with copy to DSA Crossway in relation to "Actions of Security/Administration/Medical staff contrary to disabling medical conditions." Plaintiff informed of the issuing and then replacement of Medical Permit(s)/Passes, the 7/22/19 discussion between FSA Kopec and Plaintiff, the 7/22/19 conversation between a Mess Hall C.O. and Plaintiff in which the C.O. stated "You must be important because two nurses came over here and took you[r] new Medical Permit. Plaintiff again requested resolution.

65.  On 7/31/19 Plaintiff mailed a Grievance to IGPS Pfendler in relation to not being transported for an Approved MRI of his right hip by 7/31/19 as set forth in the 6/27/19 DOCCS Health Services System Request and Report of Consultation submitted by Dr. Zaki. Plaintiff's Grievance set forth a claim of denial of adequate medical attention. Acknowledgement of filing was on 8/1/19, Titled "Need Treatment" and assigned Log Number MCY 24459-19. Upon Plaintiff's information and belief, this Grievance was not heard by the IGP and no further appeals were afforded to Plaintiff.

66.  On 7/31/19 Plaintiff mailed a Grievance to IGPS Pfendler in relation to the actions of NA Coppola on 7/23/19 in which she ripped up Plaintiff's 7/22/19 Medical Permit/Pass issued by Dr.

Zaki and gave Plaintiff a copy of his previous Medical Permit/ Pass. Acknowledgement of filing was on 8/1/19, Titled "Revoked Permit" and assigned Log Number MCY 24458-19. Hearing occurred on 8/13/19 resulting in a "Satisfied" response by the Grievance Committee. On 8/19/19 Plaintiff indicated on the response "I disagree with IGRC response and wish to appeal to the Superintendent", signed/dated the response and returned to IGPS Pfendler. Plaintiff received a IGP Superintendent determination dated 9/3/19 "Grievance is denied." Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 9/9/19. Plaintiff received a communication dated 9/16/19 from the IGP informing his of "Production and Mailing of Appeal to C.O.R.C. in Albany" on 9/16/19.

67. On 8/6/19 Plaintiff reported to Sick Call and was issued a Medical Permit/Pass Start date 8/6/19 for the medical restriction of "Other No work in Messhall may go to program."

68. On 8/12/19 Plaintiff had a call out with Dr. Zaki and discussed that working in the Mess Hall was contradictory to his issued medical restrictions. Dr. Zaki issued Plaintiff a new Medical Permit/Pass the same as the previous, for Start date 8/12/19 End date 1/12/19. The 8/12/19 Medical Permit/Pass included "This inmate has been found to be: Not Eligible to work in the Messhall."

69. In the week previous to 8/19/19 Plaintiff was called by ORC Smith and had a discussion with ORC Smith who reviewed the 8/12/19 Medical Permit/Pass issued by Dr. Zaki. ORC Smith's decision was to assign Plaintiff to "Unemployed/Unassigned" with an understanding that is the PBSOTP desired for Plaintiff to re-

-23-

turn to a Clerical position, they should call him and he would
reassign Plaintiff.

70.  On 8/21/19 Plaintiff mailed a letter, with attached
Grievance to DOCCS Central Office Review Committee ("C.O.R.C.")
and OSI, seeking their intervention in filing Grievances.

71.  On 8/20/19 Plaintiff mailed a letter to PBSOTP Team
Leader Thomas ("PBSOTP Thomas") requesting a Program Aide assign-
ment in the PBSOTP. PBSOTP Thomas responded in a Memo dated 8/26/19
in par, "At this time, PBSOTP does not have any program assign-
ments available to you."

72.  Plaintiff received a letter dated 8/21/19 from DRNY
Staff Attorney, Matt Steele ("DRNY Steele") seeking clarification
of Plaintiff's "specific Mess Hall duties you are required to
perform that go against your medical restrictions." DRNY Steele
also stated "I would like you to resubmit this request [for
Reasonable Accommodations] as one for a pushcart. You should also
specify in this request that you would need assistance loading ans
unloading the pushcart."

73.  On 8/22/19 Plaintiff was issued a new Medical Permit/
Pass by Dr. Zaki for Start date 8/22/19 - End date 2/22/20. The
new Medical Permit/Pass was the same as the previous, however,
included "This inmate has been founf to be: Eligible to work in
the Mess Hall."

74.  On 8/25/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to Dr. Zaki's issuance of the 8/22/19 Medical Permit/
Pass indicating that Plaintiff was Eligible to work in the Mess

Hall. Acknowledgement of filing was on 8/29/19, Titled "Inappro-
priate Program Placement" and assigned Log Number MCY 24519-19.
Hearing of the Grievance occurred on 9/12/19 resulting in a
"Denied" response by the Grievance Committee. On 9/18/19 Plain-
tiff failed to indicate on the response "I disagree with IGRC
response and wish to appeal to the Superintendent.", signed/dated
response and returned to IGPS Pfendler. Plaintiff received a IGP
Superintendent determination dated 10/23/19 "Grievance is denied."
Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 10/24/
19. Plaintiff received a communication dated 10/28/19 from the IGP
informing his of "Production and Mailing of Appeal to C.O.R.C. in
Albany" on 10/28/19.

   75.  On 8/26/19 Plaintiff mailed a letter to DRNY Steele in
response to the 8/21/19 request for "Specific Mess Hall duties...
and advised DRNY Steele that he would resubmit a RRA written as
directed.

   76.  On 8/28/19 Plaintiff mailed a second DOCCS RRA to the
Office of the Marcy Deputy Superintendent for Programs as directed
by DRNY Steele. Plaintiff is unaware of specific processing and/or
decision as he was not afforded Notice and did not have the oppor-
tunity to sign for receipt of the decision.

   77.  On 9/3/19 Plaintiff mailed by certified mail - return
receipt requested (Article Number 7016 1370 0002 1015 9812) with a
notarized Affidavit of Service a Grievance to IGPS Pfendler in
relation to retaliation(s); failure to adequately investigate/
intervene; denial/interference of/with adequate medical care;

-25-

denial of adequate program assignment; denial of RRA; and inter-
ference/denial of conflict resolution and/or denial of access to
the courts against defendant(s) in this action to IGPS Pfendler.
Acknowledgement of filing was on 9/11/19, Titled "Can't Work Mess
Hall" and assigned Log Number MCY 24551-19. Hearing occurred on
9/24/19 resulting in a "denied" response by the Grievance Commit-
tee. On 9/27/19 Plaintiff indicated on the response "I disagree
with the IGRC response and wish to appeal to the Superintendent",
signed/dated response and returned to IGPS Pfendler. Plaintiff
received a IGP Superintendent determination dated 10/24/19 "Griev-
ance is denied.". Plaintiff mailed his "Appeal Statement" to IGPS
Pfendler on 10/25/19. Plaintiff received a communication dated
10/29/19 from the IGP informing him of "Production and Mailing of
Appeal to C.O.R.C. in Albany" on 10/29/19.

78.   On 9/9/19 Plaintiff mailed a letter to Marcy Acting
Deputy Superintendent for Programs ("ADSP") Culver ("ADSP Culver")
in relation to "Non-response to 8/28/19 RRA".

79.   Plaintiff received a letter dated 9/11/19 from DDCP
McKoy reiterating his response(s) in his 6/26/19 letter to Plain-
tiff.

80.   On 9/17/19 Plaintiff was transported to Mohawk Glen
Radiology where an MRI was performed on his right hip. Findings
were "There is severe osteoarthritis involving the right hip joint.
This consists of obliteration of the superior joint space, flat-
tening of the femoral head and osteophyte formation. There also
appears to be some subchondral cystic formation in the roof of the

acetabulum. There is a large complex cyst that is perilabral ad-
jacent to the superior labrum that is measuring 2.4 x 2 cm. No
normal superior labrum is seen. I would favor a labral tear with
adjacent perilabral cyst. The iliopsoas and greater trochanteric
bursa are unremarkable. There is no acute fracture of disloca-
tion. I see no bone lesions. There is no significant joint effus-
ions. Similar but less extensive findings as seen involving the
left."

81.   On 9/17/19 Plaintiff was called to the C.O.'s desk in
his assigned housing unit. While C.O. was on the telephone, he
stated to Plaintiff "This is from Lieutenant Whitmore. Your sly.
You start the Mess Hall on Monday."

82.   On 9/22/19 Plaintiff mailed a grievance to IGPS Pfendler
in relation to the non-processing and/or determination of the
8/28/19 RRA. Acknowledgement of filing was on 9/23/19, Titled
"Process Reasonable Accommodations" and assigned Log Number MCY
24578-19. Hearing, in which ADSP Culver supplied verbal testimony
occurred on 10/1/19 resulting in a "Denied" response by the
Grievance Committee. On 10/4/19 Plaintiff indicated on the response
"I disagree with IGRC response and wish to appeal to the Superin-
tendent", signed/dated the response and returned to IGPS Pfend-
ler. Plaintiff received a IGP Superintendent determination dated
10/23/19 "Grievance is denied." Plaintiff mailed his "Appeal Stat-
ment" to IGPS Pfendler on 10/24/19. Plaintiff received a commun-
ication dated 10/28/19 from the IGP informing him of "production
and Mailing of Appeal to C.O.R.C. in Albany" on 10/28/19.

83.  Effective 9/23/19 Plaintiff was assigned and began work-
ing in the Mess Hall consistent with Dr. Zaki's 8/22/19 Medical
Permit/Pass.

84.  On 9/26/19 Plaintiff reported to Sick Call and received
a Medical Permit/Pass for the medical restriction of "Other No
work until 10/1/19.

85.  On 9/31/19 Plaintiff mailed a Freedom of Information Law
Request ("FOIL") to Marcy's designated FOIL Officer, Offnder Re-
habilitation Coordinator ("ORC") Gage ("ORC Gage"). By letter
dated 10/4/19, ORC Gage informed Plaintiff that assigned FOIL
Log No. was MCY 1529-19 and in part, "We anticipate a reply should
be forwarded to you within 20 days of the date of this letter
unless you are notified otherwise in writing."

86.  On 9/31/19 Plaintiff mailed a letter to DRNY Steele in-
forming his of "developing events" as to the resubmitted 8/28/19
RRA and responses to previously asked questions.

87.  On 10/2/19 Plaintiff was called to Marcy's Infirmary
(Bldg. 11) for record request/purchase of 9/17/19 MRI report of
his right hip. It was determined after review of the Plaintiff's
medical records that the report was unavailable. Plaintiff was
advised to complete an Authorization Form to be faxed to Mohawk
Glen Radiology. Plaintiff did as advised and was subsequently
allowed to purchase the 9/17/19 MRI report on or about 10/3/19.

88.  On 10/4/19 Plaintiff reported to Sick Call to request a
call out with Dr. Zaki to discuss the findings in the 9/17/19 MRI
report of his right hip and submission of an Orthopedic consult.

89.  On 10/4/19 Plaintiff mailed a letter to Dr. Zaki in re-
lation to the 9/17/19 MRI report of his right hip, submission of
an Orthopedic consult, increasing pain/discomfort with walking
long distances, request to be determined Ineligible to work in
the Mess Hall and a call out with him.

90.  On 10/5/19 Plaintiff mailed a letter to FSA Kopec re-
questing to sign out of the Mess Hall assignment as his 90 days of
service was approaching.

91.  On 10/7/19 Plaintiff reported to Sick Call and requested
removal from Mess Hall assignment and use of a wheelchair for long
distances based on 9/17/19 MRI report of his right hip. Nurse ad-
vised that she would get Plaintiff in to see Dr. Zaki and stated
"I am not getting in the middle of this. You will have to deal with
Dr. Zaki yourself." The 9/17/19 MRI report was present in Plain-
tiff's Ambulatory Health Record during this Sick Call appointment,
however, there was no signature present indicating that Dr. Zaki
had reviewed the report.

92.  In a 10/7/19 communication from FSA Kopec Plaintiff was
informed "I have called programs and they will be looking into how
many days you have worked in the Messhall."

93.  On 10/11/19 Plaintiff was scheduled for a call out with
Dr. Zaki, however, Dr. Zaki's call outs were cancelled for 10/11/
19.

94.  On 10/15/19 Plaintiff had a call out with Dr. Zaki who
stated "You have some osteoarthritis in hip", "I have requested
an appointment with Ortho for you" and Dr. Zaki issued a "Tempor-

ary Ineligible for Mess Hall until 11/26/19" which Dr. Zaki inform-
ed Plaintiff "Can be renewed".

95.  On 10/15/19 Plaintiff mailed a letter to ORC Smith in
relation to the Dr. Zaki issued 10/15/19 Medical Permit/Pass and
Marcy policy allowing prisoners to sign out of assignments in the
Mess Hall after 90 days.

96.  On 10/18/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to non-response by Marcy Superintendent as to MCY
24519-19, MCY 24551-19 and MCY 24578-19. IGPS Pfendler did not
file this Grievance and upon Plaintiff's information and belief
no hearing or further appeals were afforded Plaintiff, however,
Plaintiff did receive from the IGP on 10/25/19 IGP Superintendent
determinations as to these Grievances.

97.  On 10/22/19 Plaintiff reported to a scheduled call out
with Dr. Zaki and witnessed while waiting a conversation between
Dr. Zaki and DSA Crossway. Dr. Zaki noticed Plaintiff in the wait-
ing area, turned to Plaintiff and stated "I saw you two days ago.
This call out was scheduled in error. I will see you after you see
Orthopedics."

98.  On 10/22/19 Plaintiff was advised by PBSOTP Thomas about
not being in programs for six weeks. PBSOTP Thomas called Plaintiff
out later on in the day and showed Plaintiff an E-Mail printed by
ORC Gage from NA Coppola stating "No work and no programs" until
11/26/19.

99.  On 10/22/19 Plaintiff mailed a Grievance to IGPS Pfendler
in relation to NA Coppola informing PBSOTP staff that Plaintiff was

excused from programs until 11/26/19 as not directed by Dr. Zaki.
Hearing occurred on 11/1/19 resulting in a "Satisfied" response by
the Grievance Committee. On 11/5/19 Plaintiff indicated on the
response "I disagree with IGRC response and wish to appeal to the
Superintendent", signed/dated the response and returned to IGPS
Pfendler. Plaintiff did not receive, to his recollection, a IGP
Superintendent determination, however, received a communication
dated 11/15/19 from the IGP informing him of "Production and Mail-
ing of Appeal to C.O.R.C. in Albany" on 11/15/19.

100. On 10/23/19 Plaintiff had a conversation with PBSOTP
Team Leader Burdick ("PBSOTP Burdick") and produced for review
his copy of Dr. Zaki's issued 10/15/19 Medical Permit/Pass indi-
cating "Temporary Ineligible for Mess Hall until 11/26/19. PBSOTP
Burdick stated "I will inform Ms. Thomas of what your medical re-
strictions are."

101. On 10/24/19 Plaintiff had a conversation with PBSOTP
Taylor and produced for review his copy of Dr. Zaki's issued 10/
15/19 Medical Permit/Pass and was informed "You can come over for
programs."

102. On 10/25/19 Plaintiff received a program sticker inform-
ing him that effective 10/28/19 he was assigned to program of
"Unemployed/Unassigned."

103. Plaintiff receieved a letter dated 11/6/19 from DRNY
Steele seeking further status of RRA for pushcart, clarification
on what Mess Hall duties currently assigned to that violate medi-
cal restrictions, copies of additional records, and Release Forms

for Plaintiff to sign and return.

104. On 11/12/19 Plaintiff mailed a Grievance to IGPS Pfendler in relation to non-scheduling of Approved Orthopedic consultation for right hip. Acknowledgement of filing was on 11/14/19, Titled "Need MRI" and assigned Log Number MCY 24714-19. Hearing occurred on 11/22/19 resulting in a "Satisfied" response by the Grievance Committee. On 11/26/19 Plaintiff indicated on the response "I disagree with IGRC response and wish to appeal to the Superintendent." , signed/dated the response and returned to IGPS Pfendler. Plaintiff received a IGP Superintendent determination dated 12/11/19 "Grievance is denied.". Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 12/12/19. Plaintiff received a communication dated 12/12/19 from the IGP informing his of "Production and Mailing of Appeal to C.O.R.C. in Albany" on 12/13/19.

105. On 11/15/19 Plaintiff received in the evening mail a Medical Permit/Pass issued by Dr. Zaki for the Start date 11/15/19 - End date 5/15/20 with all previous medical restrictions with the addition of the medical restriction of "This inmate has been found to be: Eligible to work in the Messhall."

106. On 11/18/19 Plaintiff mailed a letter to DRNY Steele informing him of the 11/15/19 issued Medical Permit/Pass by Dr. Zaki.

107. On 11/20/19 Plaintiff mailed a letter to OSI with copy to PBSOTP Shupp related to physical abuse by disregard of disabling medical condition(s) by Marcy and Central Office staff and his inability to resolve the issues.

-32-

108. On 11/23/19 Plaintiff mailed a letter to DRNY Steele and sent medical records, Medical Permit(s)/Passes, RRA's, Grievances, information and Authorization Forms.

109. In a Memo dated 11/27/19 to Incarcerated Population from Anthony J. Annucci, ("Annucci"), Acting Commissioner of Doccs, the total population of DOCCS is informed that "The reliability of a new urinalysis test for Buprenorphine" has been reported for "return[ing] a number of questionable results."

110. On 12/2/19 Plaintif mailed a letter to DOCCS Director of Special Housing/Inmate Discipline ("DSHD") Venettozzi ("DSHD Venettozzi") with a copy to Marcy Superintendent in relation to having been determined positive for urinalysis as to Buprenorphine in the 3/4/19 urinalysis test.

111. Plaintiff received a letter dated 12/10/19 from DOCCS Regional Health Services Administrator ("DRHSA") Tandy-Waters ("DRHSA Tandy-Waters") related to Grievances and medical issues raised by Plaintiff.

112. On 12/11/19 Plaintiff mailed a letter to PBSOTP Thomas to request to be assigned to the PBSOTP Administrative Clerk assignment that he was previously removed from as it became vacant and PBSOTP Thomas had announced the availability.

113. On 12/12/19 Plaintiff mailed a letter to DMD Koenigsmann with copies to Dr. Zaki and DSA Crossway in relation to the non-scheduling of Approved Orthopedic consult and deliberate indifference to serious medical needs.

114. In a 12/13/19 letter to Plaintiff from DRHSA Venettozzi

Plaintiff is informed that "no further administrative action will be taken."

115. Plaintiff received a letter from DRNY Steele informing him of actions he was anticipating, i.e. writing and/or calling the Superintendent or designated DOCCS representative on Plaintiff's behalf, as DRNY Steele questioned the "Provided eight separate Medical Permit(s)/Passes, all completed in 2019 by the same Medical Provider. Six of the Passes found [Plaintiff] Ineligible to work in the Mess Hall."

116. On 12/17/19 Plaintiff was called out by ORC Smith to update medical condition/medical restrictions. After discussion and review, ORC Smith continued Plaintiff's assignment of "Unemployed/Unassigned."

117. On 12/18/19 Plaintiff mailed a letter to DRNY Steele clarifying programming issues.

118. In a letter dated 12/20/19 mailed to the Marcy Superintendant by DRNY Steele, he requests for "Review the handling of James Mercer's recent medical assessments and work assignments.", explanation of impairments and 'disability-related' issues."

119. On 12/30/19 Plaintiff was called for interview with ORC Gage and informed "I was told to give you a Request for Reasonable Accommodations Form to fill out and submit." A discussion ensued as to what Plaintiff needer Reasonable Accommodations for and ORC Gage stated "Boy you really pissed Whitmore off."

120. On 12/30/19 Plaintiff mailed a RRA to the Marcy Office of the Deputy Superintendent for Programs. The RRA requested an accommodation of "Use of a pushcart and someone to assit me in

in loading and unloading items purchased/received from Commissary/
Package Room." The RRA was received by DSP on 1/9/20, Medically
Verified by Dr. Zaki on 1/10/20, determined by ORC Gage on 2/5/20
with a denial of "As per medical above - inmate has been placed
working in the Mess Hall with specific duties that comply with
restrictions.", and on 2/5/20 Plaintiff received from ORC Gage
the denial and indicated "I disagree with this determination."

121. On 1/6/20 Plaintiff had a call out with Dr. Zaki in which
Dr. Zaki stated "I was very accommodating with medical restrictions"
and then read each medical restriction off to Plaintiff. Dr. Zaki
then stated "You have to have two modules of programs and since
you are allowed to wipe down tables while sitting down, I do not
see a problem with you working in the Mess Hall." Plaintiff re-
sponded "It is not feasible for me to sit while cleaning tables
with one hundred inmates waiting to be seated." The call out was
ended with Dr. Zaki stating "Take it up with Albany."

122. On 1/7/20 Plaintiff was called out by ORC Smith and
assigned to Mess Hall effective 1/13/20. A discussion ensued in
which Plaintiff informed ORC Smith that he was to be interviewed
on 1/8/20 for the PBSOTP Administrative Clerk position. ORC Smith
responded "Have them call me if they want you."

123. On 1/8/20 Plaintiff had an interview with PBSOTP Team
Leader Gaska ("PBSOTP Gaska") and PBSOTP Waterman for the Ad-
ministrative Clerk assignment.

124. On 1/13/20 Plaintiff began working in the Mess Hall.
After eating Breakfast, Plaintiff was called to Mess Hall Secur-
ity Office and C.O. stated "I don't know who you pissed off, but

it is coming from the top. Your on Southside Tabletops and you are
not to do anything but tabletops. If you get tired you are to sit
down and clean tabletops. I have to watch you and log what you do.
If your medical restrictions change you have to give me a copy of
them. You know who I am talking about when I say from the top?"
Plaintiff responded "No" and C.O. stated "Dep Crossway". Plaintiff
was then called into the Civilian Cook's Office, went over and
signed safety forms and went to work. Before leaving the Mess Hall
Plaintiff was approached by a second C.O. and asked "What is this
all about" to which Plaintiff supplied his beliefs. C.O. then
stated "At least your only here one Mod. You only have to work
Breakfast. Let's make the best of it."

125. In a letter dated 11/14/20, DRNY Steels received a re-
sponse to be alleged from his "12/20/19 correspondence regarding
inmate Mercer." The letter was written by DOCCS Deputy Counsel
Sheehan ("DDC Sheehan"). DDC Sheehan states "Regarding the push
cart, the facility does not have push carts...Next, his Mess Hall
job entails wiping down tables, during which he is permitted to
take breaks as needed. Accordingly, there is no reason for him to
be reassigned to a new job."

126. On 1/14/20 Plaintiff mailed a letter to DRNY Steele in-
forming him of updated involvements in the situations he was
attempting to assist Plaintiff resolving.

127. On 1/15/20 Plaintiff had a second interview with PBSOTP
Gaska and PBSOTP Waterman and was informed "The Treatment Team
has decided not to have you reassigned to the Administrative

Clerk assignment. It is not felt that it would be in the best
interest of staff and program based on the events of your prior
removal."

128. On 1/22/20 Plaintiff mailed a Grievance to IGPS Pfend-
ler in relation to the violation of time frames for a decision
as to his 12/30/19 RRA . The Grievance was not filed by IGPS
Pfendler and Plaintiff was denied a Hearing and further appeals.

129. On 1/25/20 Plaintiff mailed a Grievance to IGPS Pfend-
ler in relation to non-scheduling of Approved Orthopedic consul-
tation and deliberate indifference to serious medical neeeds.
Acknowledgement of filing was on 1/27/20, Titled "Need Treatment"
and assigned Log Number MCY 00053-20. Hearing occurred on 2/18/20
resulting in a "Satisfied" response by the Grievance Committee.
On 2/19/20 Plaintiff indicated on the response "I disagree with
IGRC response and wish to appeal to the Superintendent.", signed/
dated response and returned to IGPS Pfendler. Plaintiff received
a IGP Superintendent determination dated 4/27/20 "Grievance is
denied.". Plaintifff mailed his "Appeal Statement" to IGPS Pfend-
ler on 4/28/20. Plaintiff received a communication dated 4/29/20
from the IGP informing him of "Production and Mailing of Appeal to
C.O.R.C. in Albany" on 4/29/20.

130. On 1/28/20 Plaintiff mailed a letter to IGPS Pfendler
in relation to non-acknowledge[ment] Grievance complaints/actions.

131. On 1/28/20 Plaintiff mailed a letter to C.O.R.C., DOCCS
Office of Diversity Management and DRNY Steele in relation to
intervention into resolution of non-acknowledgement, non-filing
of complaints, denial of safeguards of DOCCS Directive 2614 and

-37-

non-notification of determinations of 8/28/19 and 12/30/19 Request(s) for Reasonable Accommodations.

132. On 2/3/20 Plaintiff mailed a letter to the Marcy Office of the Deputy Superintendent for Programs in relation to submitted RRA's/Grievance complaints and non-responses thereto.

133. In a letter dated 2/4/20 Plaintiff was informed by DRNY Steele of a 2/4/20 letter he sent to DDC Sheehan, with attached copy, attempting to resolve the issues of "Medical Pass/Permit and pushcart."

134. On 2/4/20 Plaintiff resorted to Sick Call in relation to scheduling of Approved Orthopedic consult.

135. On 2/5/20 Plaintiff had a call out with ORC Gage for a Quarterly Interview and was provided with a copy of the denied 12/30/19 RRA. ORC Gage asked Plaintiff "How did you piss Whitmore off so bad." Plaintiff then indicated on the 12/30/19 RRA "I disagree with the determination", signed/dated the RRA and ORC Gage provided Plaintiff with a copy.

136. On 2/5/20 Plaintiff mailed a Grievance to IGPS Pfendler in relation to the denial of his 12/30/19 RRA on 2/5/20. Acknowledgement of filing was on 2/6/20, Titled "Need Reasonable Accommodations" and assigned Log Number MCY 00071-20. Hearing occurred on 2/18/20 resulting in a "Denied" response by the Grievance Committee. On 2/19/20 Plaintiff indicated on the response "I disagree with IGRC response and wish to appeal to the Superintendent.", signed/dated the response and returned to IGPS Pfendler. Plaintiff received, after filing a subsequent Grievance, a

IGP Superintendent determination dated 4/27/20 "Grievance is denied." Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 4/28/20. Plaintiff received a communication dated 4/29/20 from the IGP informing him of "Production and Mailing of Appeal to C.O.R.C. in Albany" on 4/29/20.

137. On 2/7/20 Plaintiff mailed a letter to DRNY Steele informing him of the denial of the 12/30/19 RRA, his having filed a Grievance to appeal the denial and supplied further information.

138. In a 2/14/20 letter, DDC Sheehan responds to DRNY Steele's 2/4/20 correspondence.

139. On 2/19/20 Plaintiff, after returning from work in the Mess Hall at 8:10 a.m., is informed by assigned housing unit C.O. I believe you are going on a medical trip, so be ready when they call." At 8:30 a.m. Plaintiff was released from the housing unit and reported directly to Marcy's Draft Processing area. Upon entering the area, Plaintiff was told by one C.O. to "have a seat" Then a second C.O. stated "They got tired of waiting and left."

140. On 2/19/20 Plaintiff mailed a Grievance to IGPS Pfendler in relation to being denied the 2/19/20 medical trip by Security. This Grievance went unacknowledged resulting in Plaintiff mailing a second Grievance on 2/24/20 with an attached copy of the 2/19/20 Grievance. Acknowledgement of filing of the 2/24/20 Grievance was on 3/10/20 at which time Plaintiff agreed to sign off the Grievance once the Orthopedic consultation occurred. Subsequently on or about 3/13/20 Plaintif signed off this Grievance.

141. On 2/24/20 Plaintiff mailed a letter to DRNY Steele in

-39-

relation to continuing violations of disability rights.

142. On 3/6/20 Plaintiff reported to Sick Call to verify the rescheduling of his Orthopedic consultation after the occurances on 2/19/20.

143. On 3/11/20 Plaintiff was transported for evaluation ny an Orthopedic Specialist as to his right hip. The recommendation of the Orthopedic Specialist was "I think [Plaintiff] needs to see one of the Orthopedic Surgeons in the system who does total hip arthroplasty for assessment. I no longer do this procedure. In the interm, it would be best if we could limit his ambulation as much as possible."

144. On 3/11/20 Plaintiff mailed a letter to Marcy's Medical Records Department seeking to purchase a copy of the 3/11/20 Orthopedic consultation/recommednations.

145. On 3/17/20 Plaintiff had a scheduled call out with Dr. Zaki that was cancelled.

146. On 3/19/20 Plaintiff reported to Sick Call and requested time off from work in the Mess Hall until a call out with Dr. Zaki occurred to discuss the 3/11/20 recommendations of the Orthopedic Specialist. Nurse directed Plaintiff to wait in the hall while she would see what she could do. Nurse returned and stated "With hip problems it is good for mobility that you walk. Maybe we could give you a cane." Plaintiff explained the distance between his assigned housing unit and the Mess Hall and requested the use of a wheelchair. Plaintiff's request was denied.

147. On 3/19/20 Plaintiff mailed a Grievance to IGPS Pfend-ler in relation to being denied time off from work in the Mess

Hall and the use of a wheelchair. Acknowledgement of filing was on 3/20/20, Titled "Denied Adequate Treatment" and assigned Log Number MCY 00158-20. Hearing occurred on 4/8/20 resulting in a "Satisfied" response by the Grievance Committee. Note: During the Hearing an Investigative Statement supplied by NA Coppol stated to the effect "Plaintiff Approved for Upstate Orthopedics in / April. Dr. Zaki finds no reason to remove from Mess Hall as inmate can wipe tables while sitting down." On 4/9/20 Plaintiff indicated on the response "I disagree with IGRC response and wish to appeal to the Superintendent." added "w/Mess Hall issues." and also "I wish to appeal to the Superintendent.", signed/dated the response and mailed to IGPS Pfendler. Plaintiff received a IGP Superintendent determination dated 4/27/20 "Grievance is denied." Plaintiff mailed his "Appeal Statement" to IGPS Pfendler on 4/28/20. Plaintiff received a communication dated 4/29/20 from the IGP informing him of "Production and Mailing of Appeal to C.O.R.C. in Albany" on 4/29/20.

148. On 3/23/20 Plaintiff was called to Marcy's Infirmary (Bldg. 11) and issued a wheelchair "For Long Distances". Plaintiff was also instructed on proper use of a wheelchair by Nurse and given a Medical Permit/Pass issued by Dr. Zaki for Start date 3/23/20 - End date 5/31/20. Plaintiff discussed with Nurse his use of wheelchair and working in the Mess Hall to Ineligible. Nurse responded "I don't know why Dr. Zaki did not indicate on Permit that your Ineligible. I will leave your chart for his to review."

149. On 3/25/20 Plaintiff requested to Housing Unit C.O. to

-41-

Mess Hall about Plaintiff's use of a wheelchair and C.O. informed
Plaintiff "You don't have to report and you should go to Sick Call
and get Permit that your Ineligible to work in Mess Hall."

150. On 3/26/20 Plaintiff reported to Sick Call to request
Medical Permit/Pass indicating Ineligibility to work in Mess Hall.
Nurse issued Medical Permit/Pass with the medical restriction
"Other No work in Mess Hall x 3 days = WC For Long Distance" with
Start date 3/26/20 - End date 3/29/20. Nurse further advised
Plaintiff that she would track down Dr. Zaki about situation.

151. On 3/30/20 Plaintiff received requested copies of Ortho-
pedic Specialist's recommendations as to his right hip.

152. On 3/30/20 DRNY Steele, by e-mail, wrote to DDC Sheehan
in an attempt to resolve "Medical Pass/Permit and pushcart issues."

153. In a 3/30/20 cover letter, DRNY Steele mails Plaintiff
copies of the letters dated 3/30/20 and 2/14/20 that he sent to
DDC Sheehan. In DRNY Steele's cover letter he states " I am at a
bit of a loss as to why DOCCS has handled your case in this man-
ner."

154. On 4/1/20 Plaintiff mailed a letter to DRNY Steele in
response to his 3/30/20 letter. In Plaintiff's letter he informs
DRNY Steele of results of his 3/11/20 Orthopedic consult, issu-
ance of a wheelchair that allows utilization of a mobility assis-
tant, Dr. Zaki's refusal to find Plaintiff Ineligible for work in
the Mess Hall, and others.

155. On 4/20/20 Plaintiff was informed by Housing Unit C.O.
that "Mess Hall called and you are to report to work in the morn-
ing."

156. On 4/21/20 Plaintiff reported to Mess Hall. Plaintiff spoke with a Civilian Cook and requested to sign out of Mess Hall. Plaintiff was advised to get the form from the Clerk, fill it out and bring it to him. When Plaintiff gave Civilain Cook the form he was informed "I will give it to my boss Andy."

157. On 4/22/20 Plaintiff was asked by Civilian Cook in Mess Hall "What are you doing here, you signed out." Plaintiff replied "I don't know the procedures so until I am told otherwise I have to report." At the end of Plaintiff's shift, Plaintiff asked Civilian Cook "Whats my status." to which the Civilina Cook replied "I gave the form to my boss. When he lets me know your request has been approved, I will let the officers know you don't work here anymore."

158. On 4/22/20 Plaintiff mailed a letter to FSA Kopec with copy to DSP regarding his 4/21/20 "Request Removal From Food Servise/Messhall."

159. In a Memo dated 4/23/20 Plaintiff is informed by PBSOTP Thomas "We received your letter requesting to interview for a Program Aide position in PBSOTP on 3/13/20. We are writing to inform you that due to the current COVID-19 restrictions, we are waiting until we return to the program before deciding on your request. This would give the Treatment Team the opportunity to discuss your request. Thank you for your patience in this matter."

160. On 4/28/20 Plaintiff mailed a Grievance to IGPS Pfendler in relation to the non-approval of his "Request Removal From Food Service/Messhall" submitted on 4/21/20. Plaintiff signed off

this Grievance on 4/29/20 after removal from the Mess Hall.

161. On 4/29/20 Plaintiff reported to work in the Mess Hall and was informed by C.O. "I believe you were approved to sign out so you can go back."

162. On 5/4/20 Plaintiff received a program sticker from Housing Unit C.O. assigning him to H1 Porter P.M./Eve. A discusion occurred between C.O. and Plaintiff as to what work he could do without violating medical restrictions. Plaintiff was directed to wipe down surfaces and door handles.

163. In a letter dated 5/5/20 Plaintiff received Notice from DRNY Steele that "I am closing your case at this time."

164. On 5/14/20 Plaintiff reported to Sick Call to request renewal of medical restrictions. Nurse informed Plaintiff "I will give this to Dr. Zaki to sign and you will receive it in the mail."

165. On 5/15/20 Plaintiff received in the evening mail a re-newed Medical Permit/Pass with Start date 5/14/20 - End date 11/14/20 issued by Dr. Zaki.

166. On 5/19/20 Plaintiff was directed by Housing Unit C.O. to pack all of his property as he was moving to E2-41 after the count. The move occurred as informed.

167. On 5/19/20 Plaintiff was called out by PBSOTP Thomas (Bldg. 26), before moving to E2-41. PBSOTP Thomas stated "I wanted to give you your Program Satisfaction Certificate before you moved because we would not be able to call you out from general popula-tion." PBSOTP Thomas and Plaintiff had a discussion about his feel-ings of moving, not being assigned as a Program Aide and PBSOTP

Thomas asked "When did you talk to [ORC] Gage and put in your preference transfer." Plaintiff replied "I didn't. I am not eligible for a preference transfer until October."

168. In a letter dated 5/20/20 from DOCCS Deputy Commissioner McGrath Plaintiff is advised to file his Request for Reasonable Accommodations and Grievances at the facility.

169. On 5/27/20 Plaintiff received a program sticker informing him that his program assignment was changed to E2 Porter A.M./P.M. effective 5/25/20.

170. On 5/28/20 Plaintiff reported to Sick Call to request renewal of his Medical Permit/Pass for use of a wheelchair. Nurse advised, Dr. Zaki will have to sign and you will receive in the mail. The Medical Permit/Pass was received with Start date 5/28/20 - End date 11/28/20.

### V. STATEMENT OF CLAIM(S)

### FIRST CLAIM

#### DEFENDANT(S) ACTED WITH A DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS (EIGHTH AMENDMENT)

171. On 3/12/19 Lt. Whitmore acted with a deliberate indifference to Plaintiff's serious medical needs when he reassigned Plaintiff to a program assignment of L&G without benefit of consideration to Plaintiff's disabling medical condition(s) and serious medical needs. (¶¶ 6, 7, 9)

172. On or about 9/17/19 and at all times of the ensuing program changes, Lt. Whitmore acted with a deliberate indifference to Plaintiff's serious medical needs, despite medical verification

of Plaintiff's disabling medical condition(s) by interferring with
Plaintiff's medical documentation/treatment to have him placed in
program assignments contrary to the orders of his assigned medical
provider (Dr. Zaki). (¶¶ 16, 32, 39, 81, 83, 102, 119, 124, 135,
155, 161, 169)

173. On 3/25/19 Dr. Zaki acted with a deliberate indifference
to Plaintiff's serious medical needs when he issued a subsequent
Medical Permit/Pass for the medical restriction of "May work Lawns
and Grounds. Not able to operate heavy equipment." (¶ 14)

174. On 7/22/19 Dr. Zaki acted with a deliberate indifference
to Plaintiff's serious medical needs when he issued Plaintiff a
Medical Permit/Pass for the medical restriction of "Other * Due
to above limitations can not work Mess Hall duty." and then on
7/23/19 authorized the recision of the 7/22/19 Medical Permit/Pass
back to the 6/27/19 Medical Permit/Pass. (¶¶ 47, 61)

175. On 8/12/19 Dr. Zaki acted with a deliberate indifference
to Plaintiff's serious medical needs when he issued Plaintiff a
Medical Permit/Pass with a medical restriction of "This inmate
has been found to be: Not Eligible to work in the Mess Hall." and
then on 8/22/19 issued a Medical Permit/Pass with a medical
restrcition of "this inmate has been found to be: Eligible to
work in the Mess Hall." (¶¶ 68, 73)

176. On 10/15/19 Dr. Zaki acted with a deliberate indifference
to Plaintiff's serious medical needs when he issued Plaintiff a
Medical Permit/Pass with a medical restriction of "Temporary
Ineligible for Mess Hall until 11/26/19" and then on 11/15/19

issued a Medical Permit/Pass with a restriction of "This inmate has been found to be: Eligible to work in the Mess Hall." (¶¶ 94, 105)

177. On 1/6/20 Dr. Zaki acted with a deliberate indifference to Plaintiff's serious medical needs when he refused to issue a Medical Permit/Pass with a medical restriction of "This inmate has been found to be: Ineligible to work in the Mess Hall." resulting in Plaintiff's reassignment in the Mess Hall effective 11/13/20. (¶ 121)

178. NA Coppola acted with a deliberate indiffernce to Plaintiff's serious medical needs when she acted in concert with Dr. Zaki and Marcy Security and/or Administrative staff on or about 3/25/19 contributing to Plaintiff's medical restriction of "No Lawns and Grounds" being changed to "May work Lawns and Grounds. Not able to operate heavy equipment." (¶ 62) and on other accasions that can be established through discovery.

179. NA Coppola acted with a deliberate indifference to Plaintiff's serious medical needs when she acted in concert with DSA Crossway and Dr. Zaki on or about 7/23/19. (¶¶ 35, 62) and on other occasions that can be established through discovery.

180. DSA Crossway acted with a deliberate indifference to Plaintiff's serious medical needs when he acted in concert with NA Coppolaa and Dr. Zaki on or anout 7/23/19. (¶¶ 35, 62) and on other occasions that can be established through discovery.

181. DSA Crossway acted with a deliberate indifference to Plaintiff's serious medical needs when he interferred/dictated Plaintiff's medical care/treatment and program assignments after

-47-

the retirement of DSP Kinderman. (¶¶ 57, 62, 64, 97, 113, 124, 155)

182. DSP Kinderman acted with a deliberate indifference to Plaintiff's serious medical needs when he caused/intervened or allowed Plaintiff to be programmed to a program assignment in L&G. (¶ 16)

183. DSP Kinderman acted with a deliberate indifference to Plaintiff's serious medical needs when he caused/intervened or allowed Plaintiff to be programmed to a program assignment in Food Service/Mess Hall for the period of 6/10/19 until his retirement on or about 7/19/19. (¶¶ 30, 38, 39, 40, 42, 44, 49, 53, 57, 59)

184. DSP Kinderman acted with a deliberate indifference to Plaintiff's serious medical needs when he denied Plaintiff's 5/28/19 RRA on 5/31/19. (¶ 37)

185. DSP Kinderman acted with a deliberate indifference to Plaintiff's serious medical needs when he encouraged or allowed Plaintiff to be assigned to a program assignment contrary to his Medical Permit(s)/Passes and disabling medical condition(s). (¶¶ 6, 7, 29, 39, 44, 49, 53, 59)

SECOND CLAIM

DENIAL OF RIGHTS/PRIVILEGES
OF THE AMERICANS WITH
DISABILITIES ACT (EIGHTH AND
FOURTEENTH AMENDMENTS)

186. DSP Kinderman den ied Plaintiff the rights/privileges of the Americans With Disabilities Act when he denied Plaintiff reasonable accommodations for the use of a mobility assistannt for

Commissary/Package Room, despite Plaintiff being a "Qualified"
individual. (5/28/19 RRA) (¶¶ 37, 42)

187. The Marcy Office of the Deputy Superintendent for Pro-
grams denied Plaintiff the right/privileges of the Americans With
Disabilities Act when it denied Plaintiff reasonable accommodations
for the use of a pushcart and an assistant for loading/unloading
pushcart for Commissary/Package Room, despite Plaintiff being a
"Qualified" individual. (8/28/19 RRA) (¶¶ 76, 78, 82)

188. The Marcy Office of the Deputy Superintendent for Pro-
grams denied Plaintiff the right/privileges of the Americans With
Disabilities Act when it denied Plaintiff reasonable accommodations
for the use of a pushcart and an assistant for loading/unloading
pushcart for Commissary/Package Room, despite Plaintiff being a
"Qualified" individual. (12/30/19 RRA) (¶¶ 120, 136)

189. DOCCS, through its employees and/or offices denied Plain-
tiff the rights/privileges of the Americans With Disabilites Act
when it failed to intervene/correct, upon Notice, the unreasonable
denials of reasonable accommodations, despite Plaintiff being a
"Qualified" individual. (5/28/19, 8/28/19 and 12/30/19 RRA(s))
(¶¶ 76, 78, 82, 118, 120, 125, 133, 152, 153)

### THIRD CLAIM

#### DEFENDANT(S) ACTED IN CONCERT
#### WITH OVERT ACTS TO INFLICT
#### UNCONSTITUTIONAL INJURIES
#### UPON PLAINTIFF EIGHTH AND
#### FOURTEENTH AMENDMENTS)

190. In the time period of 2/4/19 through 6/26/19 Dr. Zaki
acted in concert with Marcy Security and/or Administrative staff

to deny/withhold medical treatment/diagnosis through consultation
to Plaintiff based on his programming issues with Security, despite
documented disabling medical condition(s), constituting unconsti-
tutional injuries in the furtherance of retaliation through pro-
gramming. (¶¶ 27, 32)

191. Between 3/14/19 and 3/25/19 Dr. Zaki acted in concert
with another, resulting in changes to Plaintiff's medical restric-
tions from "No Lawns and Grounds" to "May work Lawns and Grounds.
Not able to operate heavy equipment."; despite documented disabling
medical condition(s), causing unconstitutional injuries in the
furtherance of retaliations through programming. (¶¶ 10, 14, 16)

192. On or about 3/25/19 through 5/17/19 Dr. Zaki acted in
concert with DSP Kinderman, to determine Plaintiff suitable for a
program assignment in either Food Service or Inside Lawn and
Grounds, despite documented disabling medical condition(s), caus-
ing unconstitutional injuries in the furtherance of retaliations
through programming. (¶ 30)

193. On 6/27/19 Dr. Zaki, NA Coppola and other defendants
acted in concert with each other in the revocation of Plaintiff's
medical restrictions, despite documented disabling medical condi-
tion(s), causing unconstitutional injuries in the furtherance of
retaliations through programming and denial of Reasonable Accom-
modations. (¶¶ 36, 37, 42)

194. Up to and including 6/26/19, DSP Kinderman, Dr. Zaki
and Lt. Whitmore acted in concert with each other, despite Plain-
tiff's documented disabling medical condition(s), causing unconsti-

tutional injuries in the furtherance of retaliations through
programming. (¶¶ 39, 44, 46)

195. After the retirement of DSP Kinderman on or about 7/19/19,
DSA Crossway acted in concert with Dr. Zaki, NA Coppola, Lt. Whit-
more and others, despite Plaintiff's documented disabling medical
condition(s), causing unconstitutional injuries in the furtherance
of retaliations through programming. (¶¶ 56, 57, 59, 60, 61, 62,
68, 69, 73, 97, 102, 105, 113, 121, 124)

196. After the retirement of DSP Kinderman on or about 7/19/19,
the Marcy Office of the Deputy Superintendent for Programs acted
in concert with others, despite Plaintiff being a "Qualified"
individual with disabilities and documentation thereof, causing
unconstitutional injuries in the furtherance of denying Plaintiff
Reasonable Accommodations. (¶¶ 76, 82, 119, 120)

197. DOCCS, through its employees and offices, acted in
concert with each other, despite Plaintiff being a "Qualified"
individual with disabilities and documentation thereof, causing
unconstitutional injuries in the furtherance of denying Plaintiff
Reasonable Accommodations. (¶¶ 37, 42, 76, 78, 82, 86, 103, 108,
115, 118, 119, 120, 125, 131, 132, 135, 136, 137, 141, 152, 153,
163)

## VI. RELIEF REQUESTED

198. Plaintiff requests monetary award of $50,000.00 dollars
in compensatory damages and $50,000.00 in punitive damages against
defendant DOCCS in its official cacicity.

199. Plaintiff requests monetary award of $50,000.00 dollars

in compensatory damages and $50,000.00 in punitive damages against defendant Marcy Office of the Deputy Superintendent for Programs in its official capacity.

200. Plaintiff requests monetary award of $50,000.00 dollars in compensatory damages and $50,000.00 in punitive damages against defendant Lt. Whitmore in his individual capacity.

201. Plaintiff requests monetary award of $50,000.00 dollars in compensatory damages and $50,000.00 in punitive damages against defendnat retired Marcy DSP Kinderman in his individual capacity.

202. Plaintiff requests monetary award of $50,000.00 dollars in compensatory damages and $50,000.00 in punitive damages agaisnt defendant Marcy DSA Crossway in his individual capacity.

203. Plaintiff requests monetary award of $50,000.00 dollars in compensatory damages and $50,000.00 in punitive damages against defendant Marcy Dr. Zaki in his individual capacity; and

204. Plaintiff requests monetary award of $50,000.00 dollars in compensatory damages and $50,000.00 in punitive damages against Marcy NA Coppola in her individual capacity.

I, JAMES R. MERCER, JR., declare under penalty of perjury that the foregoing is true and correct.

DATED: The __4__ day of _JUNE_____, 20__20__

_James R. Mercer, Jr._
-Plaintiff's signature-

-52-